UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ERIC JENKINS,

                          Plaintiff,

          v.

THE CITY OF NEW YORK; CAPTAIN DEOCHAN; CORRECTION OFFICER O'GARRA; CORRECTION OFFICER CONGILIO

                          Defendant.

**MEMORANDUM AND ORDER**

18-CV-7024 (LDH)(LB)

---

LASHANN DEARCY HALL, United States District Judge:

    Plaintiff Eric Jenkins, proceeding pro se, asserts claims against Defendants City of New York, Captain Deochan, Correction Officer O'Garra, and Correction Officer Coniglio pursuant to 42 U.S.C. § 1983 for violations of his Fourth and Eighth Amendment rights guaranteed under the United States Constitution.[1] Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety. In the alternative, Defendants move pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings.

## BACKGROUND[2]

    Plaintiff was arrested on July 17, 2017, and arraigned on July 18, 2017. (Compl. at 4, 17, ECF No. 1.) From the time he was arrested until July 23, 2017, Plaintiff remained in the intake

---

[1] Neither the City of New York, nor the three officers named as Defendants were initially named in Plaintiff's complaint. (*See* Compl. at 1, ECF No. 1.) On December 17, 2018, Magistrate Judge Bloom ordered that the City replace the Department of Corrections as a substitute defendant, and issued an order pursuant to *Valentin v. Dinkins,* 121 F. 3d 72 (2d Cir. 1997) ("*Valentin* order"), for the City to assist Plaintiff in identifying the individual officers involved in his September 10, 2019 strip search. (ECF No. 5.) On June 17, 2019, the City identified the three officers present during the strip search; and, on June 20, 2019, amended summonses were issued identifying the Defendant-officers by name. (ECF Nos. 26, 28.) Lastly, as discussed in greater depth below, on June 18, 2019, Magistrate Judge Bloom granted the City's request to be relieved of any further obligation pursuant to the *Valentin* order to identify the officers who were responsible for the denial of food, a shower, and a bed from July 17, 2017 to July 23, 2017 as alleged by Plaintiff. (ECF No. 27.)

[2] The following facts are taken from the complaint and the documents attached to the complaint, which are deemed incorporated into the complaint by reference, and are assumed to be true for the purpose of evaluating this instant motion. *See Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) ("It is well established that documents that are

receiving room, and did not receive hot food (alternatively referred to by Plaintiff as a "proper meal"), a shower, or a bed. (*Id.* at 4, 17.)

On September 10, 2017, while detained at Otis Bantum Correctional Center,[3] Plaintiff and multiple other inmates were strip searched inside of a bathroom by the Officer-Defendants. (Compl. at 3, 4.) Plaintiff's search was conducted: (1) in the absence of an immediate threat to the housing area; (2) in front of other inmates; (3) in view of correction officers of the opposite sex; (4) with demeaning comments made about his body; (5) without mats to stand on or any coverings for private body parts; and (6) in violation of the Department of Corrections' ("DOC") search policy. (*Id.*) The strip search caused him a "loss of dignity and self-respect . . . [and] emotional stress." (*Id.*)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of defendants' liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of defendants' liability, *id*., "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so,

---

attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." (internal quotations and modification omitted)).

[3] Plaintiff refers to the location of this incident as OBCC, which is an acronym for Otis Bantum Correctional Center. (*See* Compl. at 8.); *see also* The New York City Department of Correction, Facilities Overview, *available at* https://www1.nyc.gov/site/doc/about/facilities.page (last visited Nov. 2, 2020).

it is well settled that the Court must accept the factual allegations of the complaint as true." *Id.* (citations omitted).

Moreover, where, as here, a plaintiff is proceeding pro se, his pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)). This rule is "particularly so when the pro se plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Still, "even pro se plaintiffs asserting civil right[s] claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I. Prison Litigation Reform Act

Pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see also Liner v. Goord*, 196 F.3d 132, 134 (2d Cir. 1999) ("[T]he PLRA restricts an inmate's right to file suit in federal court prior to exhausting administrative remedies and, with respect to emotional distress claims, without a prior showing of physical injury."). Plaintiff alleges that his injuries

3

consisted of "loss of dignity and self respect [sic] as well as emotional stress due to comments made during [the] search." (Compl. at 4, 18.) As Plaintiff has alleged exclusively emotional injuries, Plaintiff's complaint is barred by the PLRA. However, even if his complaint were not barred, each of his claims fails on the merits.

## II.     Strip Search

### A. Fourth Amendment

There can be no question that "inmates [] retain a limited right to bodily privacy." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). Courts assessing an inmate's claim that officers infringed upon his right to bodily privacy must undertake a two-part inquiry. *First*, the court must determine whether the inmate has exhibited an actual, subjective expectation of bodily privacy. *Id*. *Second*, the court must determine whether the prison officials had sufficient justification to intrude on the inmate's fourth amendment rights. *Id*. In considering the second question, where, as here, a plaintiff challenges an isolated strip search,[4] courts apply the standard set forth in *Bell v. Wolfish,* 441 U.S. 520 (1979), to determine whether the search was reasonable under the Fourth Amendment. In *Bell*, the Supreme Court held that "the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." 441 U.S. at 559. Rather, the Court must consider (1) "the scope of the particular intrusion," (2) "the manner in which it is conducted," (3) "the justification for initiating it," and (4) "the place in which it is conducted." *Id*. To survive a motion to dismiss, a plaintiff alleging an unconstitutional search must "plead facts sufficient to give rise to a plausible inference that the search was not reasonably related to legitimate penological interests." *Rebenstorf v. City of New*

---

[4] A strip search is an "inspection of a naked individual, without any scrutiny of the subject body's cavities." *Harris*, 818 F.3d at 58. A strip search is distinguishable from a "visual body cavity search," which extends to visual inspection of the anal and genital areas, or a "manual body cavity search," which includes some degree of touching or probing of body cavities. *Id.*

4

*York*, No. 15 CIV. 5784 (BMC), 2015 WL 6438765, at *4 (E.D.N.Y. Oct. 21, 2015) (citing *Simmons v. Cripps,* No. 12 Civ. 1061, 2013 WL 1290268, at *21 (E.D.N.Y. Feb. 15, 2013)). Defendants argue that Plaintiff's allegations regarding the search are insufficient to state a cognizable claim under the Fourth Amendment. (Defs.' Mem. L. Supp. Mot. Dismiss ("Defs.' Mem.") 5-12, ECF No. 54.) The Court agrees.

*First,* strip searches conducted in view of other inmates or officers are not, in and of themselves, unreasonable. *See Rebenstorf*, 2015 WL 6438765, at *2, *4 (dismissing plaintiff's claim for unconstitutional strip search where the Corrections Officers yelled "obscenities and remarks" during the visual body cavity search, which took place in view of other inmates and officers); *Lopez v. Phipps*, No. 18-CV-3605 (MKB), 2019 WL 2504097, at *4-*5 (E.D.N.Y. June 17, 2019) (finding that a search that was conducted in view of three other inmates did not state a viable Fourth Amendment claim); *Miller v. Bailey*, No. 05-CV-5493 (CBA)(LB), 2008 WL 1787692, at *9 (E.D.N.Y. Apr. 17, 2008) (collecting cases for the proposition that "strip searches of prisoners in the presence of other inmates and staff is not constitutionally defective, especially in light of legitimate security concerns"). That female officers were present does not change the Court's conclusion. Where an officer of the opposite sex is involved in a strip search, district courts in this circuit have recognized that these cases involve a "heightened invasion of privacy." *Holland v. City of New York*, 197 F. Supp. 3d 529, 543 (S.D.N.Y. 2016) (collecting cases). However, those courts have distinguished between "regular and close viewing" and "incidental and brief viewing of a naked" inmate, with the latter being found constitutional. *Id*. (internal quotations omitted). Here, there are no allegations that the strip search involved anything more than an incidental or brief viewing of Plaintiff by officers of the opposite sex.

*Second,* allegations that officers made demeaning comment about Plaintiff's body during the search does not render the search unreasonable under law. *See Rebenstorf*, 2015 WL 6438765 at *4 (dismissing plaintiff's claim for unconstitutional strip search where the Corrections Officers yelled "obscenities and remarks" during the visual body cavity search, which took place in view of other inmates and officers). While "indefensible and unprofessional," allegations of verbal threats and verbal abuse are not sufficient to transform an otherwise lawful strip search into one proscribed by the Constitution. *Id.* at *4 (quoting *Jermosen v. Coughlin,* 878 F.Supp. 444, 449 (N.D.N.Y. 1995)); *see also Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) ("The claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly dismissed.").

*Third,* Plaintiff's allegation that he lacked a mat to stand on during the search is likewise insufficient to state a claim. In this regard, Plaintiff's complaint is akin to *Mercedes v. City of New York,* 19-CV-04094(KAM)(LB), 2020 WL 2219186, at *1 (E.D.N.Y. May 6, 2020). In *Mercedes*, the district court found that the plaintiff had not sufficiently pleaded an unreasonable search where the plaintiff alleged, among other things, that he had to stand barefoot in urine and saliva during a strip search.[5] *Id.*

*Fourth,* the allegation that the strip search violated "search policy" does not rise to the level of a Fourth Amendment violation. (Compl. at 4.) To start, Plaintiff does not specify what policy was alleged violated. However, assuming Plaintiff is referring to a violation of a DOC policy or regulation, such a violation does not, in and of itself, constitute a cognizable constitutional claim. *See Rebenstorf*, 2015 WL 6438765, at *4 (finding no Fourth Amendment

---

[5] *Mercedes* was analogous in several other respects. There, female officers watched while the search was conducted, multiple officers were laughing during the search, and there was no probable cause to search plaintiff as all inmates in an entire housing unit were subjected to strip searches. 2020 WL 2219186, at *1.

violation where violation of DOC regulation alleged); *Simmons v. Cripps,* No. 12-CIV-1061, 2013 WL 1290268, at *21 (S.D.N.Y. Feb. 15, 2013) ("As a general matter, violations of state or local prison regulations, do not, in themselves, constitute violations of federal rights."), *report and recommendation adopted*, No. 12-CIV.-1061, 2013 WL 1285417 (S.D.N.Y. Mar. 28, 2013).

*Fifth,* that there was no particularized suspicion of Plaintiff does not render the search unconstitutional. Indeed, "routine and random" searches divorced from any particularized suspicion have long been deemed constitutional. *See Covino v. Patrissi*, 967 F.2d 73, 75, 80 (2d Cir. 1992) (affirming district court's denial of a preliminary injunction seeking to enjoin prison officials from conducting "random visual body-cavity searches," as such searches "are reasonably related to its legitimate penological interests"); *Rebenstorf*, 2015 WL 6438765, at *3 (dismissing plaintiff's visual body cavity search claim for failing to state a claim under the Fourth Amendment because plaintiff failed to make any allegations that the search, which took place in front of other inmates and officers, was any different from "a routine, random strip search of inmates"); *Walker v. Ponte*, No. 14 CIV. 8507 (ER), 2016 WL 4411415, at *4 (S.D.N.Y. Aug. 18, 2016) (collecting cases for the proposition that "random strip searches may be conducted [] in detainees' housing units").

Against this backdrop, the Court has considered each of the allegations related to the search and considered the scope, manner, justification, and place of the strip search at issue, as required by *Bell*. The scope of the search was a strip search, rather than a visual or manual body cavity search. While the search was conducted in view of other inmates and female correction officers, it was conducted in the bathroom rather than some place more public. Furthermore,

7

there is a legitimate penological interests in conducting a random and routine strip search of a housing unit.[6] Accordingly, Plaintiff's Fourth Amendment claim is dismissed.

### B. Eighth Amendment[7]

"The unnecessary and wanton infliction of pain on a prisoner constitutes cruel and unusual punishment in violation of the Eighth Amendment." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (internal quotations omitted). Prison officials violate the Eighth Amendment when: (1) the alleged punishment is "objectively, sufficiently serious," and (2) the alleged perpetrator possesses a "sufficiently culpable state of mind." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (internal quotations omitted). The Court construes Plaintiff's Eighth Amendment claim as a complaint that the strip search constituted sexual abuse. Certainly, "a single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights." *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015). Nonetheless, Defendants argue that, as alleged, Plaintiff has not stated a cognizable Eighth Amendment claim. (Def.'s Mem. 10.) The Court agrees.

Generally, a single strip search, without more, "reflect[s] a legitimate penological purpose, rather than the wanton infliction of an objectively serious deprivation." *Vaughn v.*

---

[6] Were the Court to construe Plaintiff's complaint as alleging an unlawful strip search policy, the Court would find that Plaintiff has not alleged facts to even plausibly allege that the search policy was unrelated legitimate penological interests. *See Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 326 (2012) ("[A] regulation impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'" (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987))).

[7] From Plaintiff's filings, it appears that the strip search occurred after an arrest, and not after a conviction. (*See* Pl.'s Opp. Defs.' Mot. Dismiss ("Pl.'s Opp.") 1, ECF No. 55. ("A person rights are not taken away for merely being arrested[.]"); *see also* Compl. at 4, 17 (alleging that Plaintiff was arrested on July 17, 2017 and arraigned July 18, 2017).) Generally, Eighth Amendment protection against cruel and unusual punishment applies only after conviction. *See Whitley v. Albers*, 475 U.S. 312, 318 (1986) ("The Clause applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." (internal quotations omitted)). However, courts in the Second Circuit "'apply the established Eighth Amendment framework for claims of sexual abuse by prison officials' to pretrial detainees." *Cole v. Suffolk Cty. Corr. Facility*, No. 20-CV-1883, 2020 WL 2113205, at *3 (E.D.N.Y. May 4, 2020) (quoting *Harry v. Suarez*, No. 10-cv-6756, 2012 WL 2053533, at *2 n.3 (S.D.N.Y. June 4, 2012) (collecting cases)).

*Strickland*, No. 12 CIV. 2696 (JPO), 2013 WL 3481413, at *3 (S.D.N.Y. July 11, 2013) (collecting cases).  For example, in *Cole v. Suffolk Cty. Corr. Facility*, the inmate alleged that a prison official groped his penis and scrotum while frisking him.  2020 WL 2113205, at *4.  There, the court found that this contact was "too similar to the type of incidental contact accompanying a run-of-the-mill pat down to reasonably infer any inappropriate touching or malicious intention." *Id.*  A similar analysis is applicable here.  Plaintiff has not alleged any inappropriate touching or malicious intention that would rise to the level of an Eighth Amendment violation.  Accordingly, Plaintiff's Eighth Amendment claim related to his strip search is dismissed.[8]

### III. Lack Of Hot Food, Shower, And Bed From July 17, 2017 To July 23, 2017

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010).  In Plaintiff's complaint, filed on December 3, 2018, he failed to identify any officer allegedly responsible for his denial of hot food, a shower, and a bed while he was in the intake room between July 17, 2017 and July 23, 2017 (the "July 17 to July 23 allegations").  (Compl. 4, 17)  This need not be fatal.  In *Valentin v. Dinkins*, the Second Circuit ruled that a pro se litigant is entitled to assistance from the district court in identifying a

---

[8] In his opposition, Plaintiff states—for the first time—the same strip search is also violative of the First Amendment as it violates his religion.  (Pl.'s Opp 1)  Plaintiff does not specify what religion he follows or allege any additional facts with respect to any First Amendment claim.  In any event, his First Amendment claim fails.  "Reasonable strip searches of prisoners, regardless of their religion, are generally acceptable under the First Amendment because they further the compelling governmental interest of penological safety." *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 324 (S.D.N.Y. 2006), *aff'd*, 461 F. App'x 18 (2d Cir. 2012).  The Court has already found that the search, as pleaded, constituted a routine and random search and was thus justified by legitimate penological interests.  And courts in this circuit that have examined whether "standard strip searches" of Muslim inmates—"whose religion might forbid them from being seen naked by other individuals"—violate the First Amendment have found that such searches are not unconstitutional.  *Cook v. City of New York*, No. 1:19-CV-3858 (PKC) (JO), 2019 WL 3388909, at *2 (E.D.N.Y. July 26, 2019) (quoting *Pizarro v. Bd. of Corr.*, No. 16-CV-2418 (RJS), 2018 WL 3462512, at *5 (S.D.N.Y. July 17, 2018) (collecting cases)).  Accordingly, any First Amendment claim is also dismissed.

defendant. 121 F.3d at 76. However, the Second Circuit made clear that its ruling in *Valentin* was "not intended to preclude a finding by the district court, after further inquiry, that the information available is insufficient to identify the defendant with enough specificity to permit service of process, so that dismissal of the complaint is warranted." *Id.*

Here, Magistrate Judge Bloom issued a Valentin order against Defendant City of New York (the "City") in an effort to assist Plaintiff in identifying any DOC personnel who might be responsible for the July 17 to July 23 allegations.[9] (ECF No. 10.) The order required the City to locate Plaintiff's movement records during this time period. (*Id.*) After reviewing Plaintiff's movement records, the City determined that Plaintiff was only in intake for a period of approximately 28 hours—from 1:10 a.m. on July 19, 2017 through 5:35 a.m. on July 20, 2017— rather than the five days alleged in his complaint. (ECF No. 15.) In that 28-hour time period, the City determined that nearly 60 people had contact with Plaintiff. (ECF No. 26.) Plaintiff never provided counsel for the City with any identifying details which could assist in narrowing the individual(s) allegedly responsible for his deprivations. (ECF No. 26.) Counsel from the City met with three captains that were scheduled to supervise intake at OBCC during the time period Plaintiff was in intake, but none of these individuals recalled Plaintiff or the allegations. (*Id.*) Ultimately, Magistrate Judge Bloom determined that a 60-person list of potential Defendants was insufficient to identify the potential tortfeasor with enough specificity to permit service, as it would be unreasonable to name and serve 60 people as defendants in this matter. (ECF No. 27.) To-date, Plaintiff has not otherwise identified the alleged wrongdoers. On this

---

[9] In opposition to the motion to dismiss, Plaintiff requests a court order to assist him in gaining access to video footage from July which will show that he was held for 5 days without shower or a hot meal, and may presumably show who was interacting with Plaintiff during this time. (Pl's Opp. 4.) Defendants have already represented to Plaintiff and the Court that no such surveillance video exists and accordingly, this request is denied. (ECF No. 26.)

10

basis alone, Plaintiff's claims related to the lack of food, shower and a bed are ripe for dismissal.[10]

### IV. Municipal Liability

Plaintiff failed to state a claim for violations of his constitutional rights with respect to the strip search, and accordingly, he cannot sustain a claim against the City pursuant to *Monell v. Department of Social Services,* 436 U.S. 658 (1978). *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (observing that *Monell* liability does not lie where a municipality's officer does not inflict constitutional harm); *Johnson v. City of New York*, 551 F. App'x 14, 15 (2d Cir. 2014) (summary order) (affirming district court's dismissal of *Monell* claim where plaintiff did not allege a valid underlying constitutional deprivation against the City). As to the July 17 to July 23 allegations, he has failed to allege that any deprivations he experienced were the result of a policy, custom, or practice by the City, as required by *Monell. See Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (recounting that to state a *Monell* claim against a municipality, a plaintiff must plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right").

\*   \*   \*

---

[10] Even if Plaintiff were to identify these individuals, his claims would still fail on the merits. The denial of hot food for 28 hours does not constitute a constitutional violation. *See Brooks v. NYC DOC Comm'r,* No. 14-CV-6283 (RRM) (CLP), 2016 WL 4530456, at \*4 (E.D.N.Y. Aug. 29, 2016) (collecting cases for the proposition that pretrial detainees' lack of access to hot food for up to two weeks is insufficient to state claim). Nor does a claim regarding unconstitutional conditions of confinement lie based on lack of showers for 28 hours. *See id.* at \*5 (collecting cases for the proposition that lack of access to showers for up to thirteen days is insufficient to state claim for deprivation of rights). Lastly, the lack of a bed or mattress for 28 hours is not sufficient to state a cognizable constitutional claim. *See, e.g., Myers v. City of New York,* No. 11 CIV. 8525 (PAE), 2012 WL 3776707, at \*6-7 (S.D.N.Y. Aug. 29, 2012) (collecting cases for the proposition that courts have found that a detainee who has been forced to sleep on the floor or on a "filthy" surface for "multiple days" does not have a cognizable claim for a constitutional violation).

Having dismissed all of Plaintiff's federal claims, and as the parties here are not diverse of citizenship, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over Plaintiff's other claims to the extent they arise under the state constitution or common law.  *See Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) ("[W]e have said that if a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well." (internal quotations omitted)); *see also First Capital Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) ("The exercise of supplemental jurisdiction is left to the discretion of the district court[.]").  These claims are therefore dismissed without prejudice for lack of subject-matter jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendants' 12(b)(6) motion is GRANTED, and the complaint is dismissed in its entirety.  Accordingly, the Court need not reach Defendants' 12(c) motion.

In light of his pro se status, Plaintiff is granted leave to file an amended complaint within 30 days from the entry of this memorandum and order.  *Cruz v. Gomez*, 202 F.3d 593 (2d Cir. 2000).  The amended complaint must be captioned "Amended Complaint" and bear the same docket number as this memorandum and order.  Failure to file an amended complaint within 30 days, as directed by this memorandum and order, will result in dismissal of Plaintiff's case for failure to prosecute.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

|  |  |
|---|---|
|  | SO ORDERED. |
| Dated: Brooklyn, New York<br>November 12, 2020 | /s/ LDH<br>LaSHANN DeARCY HALL<br>United States District Judge |